LIONEL ROBERT McDONALD v. THE TRUSTEES OF FAYETTEVILLE TECHNICAL INSTITUTE

No. 7912DC500

(Filed 1 April 1980)

**Master and Servant § 9; Colleges and Universities § 1— teacher at technical institute—resignation—action to recover salary**

　　In plaintiff's action to recover his salary as an instructor at Fayetteville Technical Institute from 10 July 1976 to 23 August 1976, plaintiff was entitled to have his case submitted to the jury where his evidence tended to show that plaintiff last taught during the first session of summer school which ended on

9 July 1976; on that date plaintiff and the trustees of the Institute entered into a contract covering the period of 1 July 1976 through 30 June 1977; plaintiff resigned his teaching position on 23 August 1976; the parties intended that the acceptance of plaintiff's resignation would relieve plaintiff of his duty to teach and defendants of their duty to pay but did not intend to rescind other portions of their contract; and the contract entitled plaintiff to recover if his resignation did not take place prior to the commencement of the fall quarter, the first day of which was 23 August 1976.

APPEAL by plaintiff from *Cherry, Judge.* Judgment entered 22 February 1979 in District Court, CUMBERLAND County. Heard in the Court of Appeals 9 January 1980.

Plaintiff filed his complaint against defendants, the Trustees of Fayetteville Technical Institute (hereinafter Trustees), seeking payment of $828 for a salary for 23 days in August 1976 and leave to withdraw funds from his retirement account without further wrongful interference by the Trustees. In their answer, the Trustees alleged that plaintiff failed to comply with his contract with Trustees.

Plaintiff's evidence at trial tended to show that plaintiff worked as an instructor in business administration at Fayetteville Technical Institute from August 1971 through 9 July 1976 and signed written yearly contracts with the Trustees during this period. In July 1975, plaintiff signed a contract for a term of employment from 1 July 1975 through June 1976. The contract provided that plaintiff would work fall, winter, and spring quarters and one of two sessions of summer school. Plaintiff agreed to "discharge faithfully all of the duties imposed on faculty members of [sic] the Laws of North Carolina and the rules and regulations of the Board of Trustees of said Institution." In consideration of the agreement, the Trustees promised to pay plaintiff "for services rendered during the life of this contract the sum to which he is entitled." The contract further stated that "should this contract not be renewed by either party as of May 1 of the following year [1976], that said contract will be terminated as of May 31 of the year following the date of this contract [1976]." Pursuant to this contract, plaintiff taught the fall quarter of 1975, winter quarter of 1975-1976, and spring quarter of 1976. He also taught the first session of summer school which ran from 1 June 1976 or 9 July 1976. On 9 July 1976, plaintiff and the Trustees entered into a contract for the 1976-1977 school year. Said con-

tract was substantially the same as the prior contract except for an increase in salary and 15 days of annual leave. The beginning date of employment was 1 July 1976 and was to extend through 30 June 1977.

On 10 August 1976, plaintiff submitted his resignation from employment at the institute to be effective 10 September 1976. The fall quarter of 1976 began in August. Plaintiff admitted that he resigned his employment to go to work at Carolina Trace. On 23 August 1976, the beginning of the fall quarter 1976, plaintiff reported to the institute. He had not worked since 9 July 1976. When plaintiff arrived at the institute on 23 August 1976, he was summoned to the President's Office. Pursuant to a discussion with the president, plaintiff signed an offer of resignation to be effective the same day. The president accepted said offer on the same date. Several days later, plaintiff was told that he would not be paid for 9 July 1976 through the end of his resignation. On 24 August 1976, the dean of fiscal affairs of the institute wrote plaintiff that in accordance with school policy as set forth in the faculty handbook, plaintiff was overpaid from 10 July 1976 to 31 July 1976 in the net amount of $699.39. This amount was later recouped from plaintiff's retirement account. On cross-examination, plaintiff testified that he was not aware of the policy provisions attached as an exhibit to Trustees' answer until August 1976 and that he had been issued a faculty handbook each year. Plaintiff testified that during July and August, 1976, he was trying to learn about his new job at Carolina Trace but was not being paid.

At the conclusion of plaintiff's case, the Trustees moved for a directed verdict, which was allowed on the grounds that Trustees had not breached the contract of employment with plaintiff, but plaintiff had breached the contract. The court denied plaintiff's motion that the directed verdict be set aside and that he be granted a new trial. Plaintiff appealed.

*Woodall & McCormick, by Edward H. McCormick, for plaintiff appellant.*

*McCoy, Weaver, Wiggins, Cleveland & Raper, by L. Stacy Weaver, Jr., for defendant appellees.*

ERWIN, Judge.

The ultimate question before us is the propriety of the trial court's entry of the directed verdict. To ascertain this answer, we must consider whether plaintiff's evidence when viewed in the light most favorable to him is sufficient for submission to the jury. *Kelly v. Harvester Co.*, 278 N.C. 153, 179 S.E. 2d 396 (1971).

Plaintiff's letter dated 10 August 1976 provided in pertinent part:

"August 10, 1976

To Whom It May Concern:

As of August 10, 1976, I offer my resignation as an instructor at Fayetteville Technical Institute to be effective one month hence, September 10, 1976.

Fayetteville Technical Institute has been very good to me as I hate leaving, but opportunities elsewhere force me to render my resignation at this time."

Defendant did not act upon plaintiff's letter until 23 August 1976. Thus, this letter is not the determining factor in disposing of this case in view of the events that follow.

After receiving plaintiff's letter, defendants' agent, the president of the institute, called plaintiff to his office and told plaintiff that he could resign as of that day. Plaintiff wrote a letter of resignation, which was accepted by Mr. Boudreau, the president of the institute, stating:

"August 23, 1976

To Whom It May Concern:

This letter supercedes the letter dated August 10, 1976 whereby I resign my position at Fayetteville Technical Institute effective August 23, 1976."

This evidence, when viewed in the light most favorable to plaintiff, tends to show an offer by defendants and an acceptance by plaintiff creating a new contract between the parties, *i.e.*, to rescind the old one. It is clear that plaintiff and defendants in their execution of their new agreement intended to relieve plaintiff of

his duties to teach under the employment contract and to relieve defendants of their duty to pay under the same contract. It is not equally clear that the parties intended to totally rescind the agreement as to its other provisions.

To have the effect of a total rescission, a subsequent contract must either deal with the subject matter of the former contract so comprehensively as to be complete within itself and to raise the legal inference of substitution, or it must present such inconsistencies with the first contract that the two cannot in any substantial respect stand together. *Bank v. Supply Co.*, 226 N.C. 416, 38 S.E. 2d 503 (1946). Neither requirement is met here. The original contract expressly provided that plaintiff was subject to the rules and regulations of the Board of Trustees of the institute. Plaintiff admitted that he knew that rules and regulations sometimes took the form of policy and that one of the ways in which those policies were enunciated to the faculty was through faculty handbooks. In the 1976 handbook, it was specifically stated that:

> "In the event an instructor under contract for the following school year is granted a leave of absence with pay and he either fails to honor such contract or resigns prior to commencement of the fall quarter for other than valid reasons, as determined by the President of the Institution, such absence will be classified as leave without pay and *he will be required to refund to the Institution all salary including matching funds paid to him during this period of absence.* Termination or failure to fulfill a contract to accept other employment will not be considered a valid reason." (Emphasis added.)

The subsequent agreement entered into by the parties does not expressly refer to, revoke, or rescind the provision, nor is it necessarily inconsistent with it. That the court is the proper determiner of the legal effect of a later instrument in our State was established in *Bank v. Supply Co., supra.* We hold that the provision is enforceable, because it still subsists. *See Bank v. Supply Co., supra.* We have no doubt that the 1976 contract governs the parties. Plaintiff's whole basis of recovery is based thereon, and plaintiff testified:

> "I have not been paid anything for the month of August, 1976. I have computed the amount that I contend is due me

to be $829.61. I divide 31 into $1,118.00 and then multiplied that times 3. The total of both of those figures, the $699.39 and the $829.61 comes to $1,529.00, and that is the amount that I contend is owed me by the Defendant."

The contract expressly covers the period in question. Even so, we believe that plaintiff was entitled to have his case submitted to the jury. His contract entitles him to recover if his resignation did not take place prior to the commencement of the fall quarter. Plaintiff's evidence tends to show that the first day of the fall quarter was 23 August 1976 and that he reported to work and subsequently submitted his resignation. This evidence, if believed, is sufficient to support a verdict for plaintiff, and the order entered below is

Reversed.

Judges CLARK and MARTIN (Harry C.) concur.